UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
Northern Division

| | | |
|---|---|---|
| RODNEY LYLE | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. WDQ-02-2075 |
| | ) | |
| ESPN Zone | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

Plaintiff, Rodney Lyle, hereby moves in opposition to the Defendant's Motion for Summary Judgment and requests that it be Denied. In support of this motion the Plaintiff states that:

1.    The Defendant has filed a motion for summary judgment alleging that there are no genuine disputes as to any material facts as to the Plaintiff's claims against the Defendant, and that the Defendant is entitled to judgment as a matter of law.

2.    The Plaintiff controverts the Defendant's allegations and states that there do exist genuine disputes as to material facts, and that the Defendant is not entitled to judgment as a matter of law, as is more fully set forth in the attached Memorandum in Support of Plaintiff's Motion In Opposition to the Defendant's Motion for Summary Judgment.

3.    The Defendant is not entitled to Summary Judgment, as the Plaintiff has stated a prima facie case of sexual harassment. *See* Exhibit 1, Deposition of Rodney Lyle ("Lyle Dep.");

1

Exhibit 2, Deposition of Ramina Adolemaiu-Bey ("Bey Dep."); Exhibit 3, Affidavit of Keith Parker ("Parker Aff."); Exhibit 4, Affidavit of Devon Thompson ("Thompson Aff."); *see also* Memorandum in Support of Plaintiff's Motion In Opposition to the Defendant's Motion for Summary Judgment.

      4.      The Plaintiff was sexually harassed because of his sex. *Id.*

      5.      Defendant, ESPN, did not take immediate and appropriate action to prevent and correct the sexually offending behavior.  *Id.*

      7.      The Plaintiff took reasonable steps under the circumstances to prevent or correct the harm.  *Id.*

      8.      There is a genuine dispute of material facts between Plaintiff and Defendant precluding summary judgment.  *Id.*

      WHEREFORE, Plaintiff, Rodney Lyle, respectfully requests that the Defendant's Motion for Summary Judgment be DENIED.

                  Respectfully submitted,

                  EDELSTEIN & RADFORD


                  /s/

                  _____
                  Morton Edelstein
                  Federal Bar No.: 01339
                  110 St. Paul Street, Suite 402
                  Baltimore, MD 21202
                  410-685-0770

                  Attorney for the Plaintiff

Dated: July 17, 2003

## **CERTIFICATION OF SERVICE**

I HEREBY CERTIFY that on this 17th day of July 2003, copies of the foregoing Plaintiff's Motion in Opposition to Summary Judgment and Memorandum in Support of the same were mailed electronically first class to Kevin C. McCormick, Attorney for Defendant, at Whiteford, Taylor & Preston, Seven Saint Paul Street, Baltimore, Maryland 21202, Attorney for the Defendant.

/s/

_____

Morton Edelstein
Federal Bar No.: 01339
110 St. Paul Street, Suite 402
Baltimore, MD 21202
410-685-0770

Attorney for the Plaintiff

UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
Northern Division

| | | |
|---|---|---|
| RODNEY LYLE | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. WDQ-02-2075 |
| | ) | |
| ESPN Zone | ) | |
| | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

## **ORDER**

Having read and considered the Defendant's Motion for Summary Judgment and the

Plaintiff's response filed thereto,

It is the _____ day of _____, 2003, by the United States District Court for

the District of Maryland,

ORDERED that the Defendant's Motion for Summary Judgment be

DENIED.

_____
United States District Judge

## TABLE OF AUTHORITIES

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)

*Baskerville v. Culligan Int'l Co.*, 50 F.3d 428 (7th Cir. 1995)

*Barrett v. Applied Radiant Energy Corp.*, 240 F.3d 262 (4th Cir.)

*Beardsley v. Webb*, 30 F.3d 524, 529 (4th Cir. 1994).

*Brown v. Perry*, 184 F.3d 388 (4th Cir. 1999)

*Burlington v. Ellerth,* 524 U.S. 742 (1998)

*Charbonnages de France v. Smith*, 597 F.2d 406 (4th Cir. 1979)

*Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)

*Dwyer v. Smith,* 867 F.2d 184 (4th Cir. 1989)

*EEOC v. R& R Ventures,* 244 F.3d 334 (4th Cir. 2001)

*Ellerin v. Fairfax Savings*, 652 A.2d 1117 (Md.  1995)

*Faragher v. Boca Raton*, 524 U.S. 775 (1998)

*Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592 (4th Cir. 1985)

*Ghassenieh v. Schaeffer*, 447 A.2d 84 (Md. 1982)

*Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), *cert. denied*, 439 U.S. 970 (1978).

*Harris v. Forklift*, 510 U.S. 17, 114 S.Ct 367, (1993)

*Hartsell v. Duplex Products, Inc.*, 123 F.3d 766 (4th Cir. 1997)

*Henson v. Dundee*, 682 F.2d 897 (11th Cir. 1982)

*Janelsins v. Button*, 648 A.2d 1039 ( Md. Ct. Sp. App. 1994)

*Katz v. Dole,* 709 F.2d 251 (4th Cir. 1983)

*Lack v. Wal-Mart Stores, Inc.*, 240 F.3d 255 (2001)

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)

*Matvia v. Bald Head Island Management*, 259 F.3d 261 (4th Cir. 2001)

*Meritor Savings Bank v. Vinson*, 477 U.S. 57 (1986)

*Mikels v. City of Durham*, 183 F.3d 323 (4th Cir. 1999)

*Miree v. De Kalb County*, 433 U.S. 25 (1977).

*Montgomery Ward v. Wilson*, 664 A.2d 916 (Md. 1995)

*Nelson v. Carroll*, 735 A.2d 1100 (Md. 1999)

*Oncale v. Sundowner Offshore Services, Inc.*, 163 F.3d 1027 (7th Cir. 1998)

*Paroline v. Unisys Corp.*, 879 F.2d 100 (4th Cir. 1998)

*Podberesky v. Kirwan*, 38 F.3d 147 (4th Cir. 1994)

*Pulliam Inv. Co. v. Cameo Properties,* 810 F.2d 1282 (4th Cir. 1987)

*Scannell v. Bel Air Police Dept.*, 968 F. Supp. 1059 (D.Md. 1997)

*Schaeffer v. Miller*, 587 A.2d 491 (Md. 1991)

*Shealy v. Winston*, 929 F.2d 1009 (4th Cir. 1991)

*Smith v. First Union Nat'l Bank*, 202 F.3d 234 (4th Cir. 2000)

*Spicer v. Virginia, Dept. Of Corr.*, 66 F.3d 705 (4th Cir. 1995)

*Stein v. Chessie Computer Services, Inc.,* 1993 WL 524752 (D.Md. 1993).

*United States v. Diebold, Inc.,* 369 U.S. 654 (1962)

*Ward v. Johns Hopkins University*, 861 F.Supp. 367 (D.Md. 1994).

UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
Northern Division

| | | |
|---|---|---|
| RODNEY LYLE | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. WDQ-02-2075 |
| | ) | |
| ESPN Zone | ) | |
| | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff opposes Defendant's Motion for Summary Judgment.  In support thereof, Plaintiff states that there is a genuine issue of material fact regarding Plaintiff's claims, and Zone Enterprises of Maryland, L.L.C. (hereinafter "ESPN") is not entitled to judgment as a matter of law.  This memorandum is submitted in support of Plaintiff's opposition to Defendant's motion.

### Standard of Proof for Summary Judgment

Plaintiff's Opposition to Summary Judgment must be granted, as there are genuine issues of material facts.   Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  "Summary judgment is not appropriate when there is an issue of fact for a jury to determine at trial, which is the case when there is sufficient evidence favoring the non-moving

7

party upon which a jury can return a verdict for that party." *Shealy v. Winston*, 929 F.2d 1009,

1012 (4th Cir.1991); *see also Podberesky v. Kirwan*, 38 F.3d 147, 157 ("A district court may not

resolve conflicts in the evidence on summary judgment motions...."), *reh'g, en banc, denied*,  46

F.3d 5 (4th Cir.1994), *cert. denied,* 115 S.Ct. 2001 (1995).

ESPN bears the burden of showing that there are no genuine issues as to any material

fact.  FED. R. CIV. P. 56 (c); *Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282 at 1286 (4th

Cir. 1987) (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir.1979)).  When

ruling on a motion for summary judgment, the court must construe the facts alleged in the light

most favorable to Rodney L. Lyle, Plaintiff. *Anderson v. Liberty Lobby, Inc., supra; Matsushita*

*Elec. Indust. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587-88, 106 S.Ct. 1348 (1986); *United*

*States v. Diebold, Inc*., 369 U.S. 654, 655, 82 S.Ct. 993 (1962); *Gill v. Rollins Protective Servs.*

*Co.*, 773 F.2d 592, 595 (4th Cir.1985).

This is not a case to be disposed of by summary judgment. *Id.* There are genuine disputes

of material facts as to whether ESPN had a sexual harassment policy, and if they did have such a

policy was it effective and whether the sexual harassment was severe and pervasive.

Construing all facts in favor of the plaintiff, it is evident that the Plaintiff has provided

sufficient evidentiary support upon which reasonable minds might differ as to the outcome of

this aspect of the parties' dispute. *Anderson v. Liberty Lobby, supra.*   Plaintiff, Rodney Lyle's

claim of hostile environment must survive summary judgment, as he has stated a prima facie

case showing that the harassing actions took place.  *Katz v. Dole*, 709 F.2d 251, 256 (4th

Cir.1983). *See also Dwyer v. Smith*, 867 F.2d 184, 187 (4th Cir.1989).

**Brief Statement of Facts**

Plaintiff went for an interview at ESPN on December 16, 1998 and began working at the Baltimore ESPN on December 28, 1998 as a line and saute cook making $10.50 per hour. *See* Ex. 1, Lyle Dep. 74. Plaintiff never received an employee handbook or a policy manual on sexual harassment. *See* Ex. 1, Lyle Dep. 66-69 & 71-72. The ESPN kitchen was female dominated. *See* Ex. 2 Bey Dep. 10. The female employees constantly talked about sex and made sexual comments to the males. *See* Ex. 1 Lyle Dep. 103; *See* Ex. 2 Bey Dep. 12, 13, 22, 23; Ex. 3, Parker Aff. ¶ 3. Mr. Lyle found the sexual comments offensive. *See* Ex. 1, Lyle Dep. 103-104; Ex. 3, Parker Aff. ¶¶ 3 & 5.

Around July 2000, Angela Anderson, a line cook at ESPN, started making sexual comments to Mr. Lyle. *See* Ex. 1, Lyle Dep. 100-101, 105; Ex. 2, Bey Dep. 18-20; Ex. 3, Parker Aff. ¶ 3. She constantly spoke of oral sex and requested him to perform oral sex on her. *See* Ex. 1, Lyle Dep. 101, 105, 114, 115; Ex. 2, Bey Dep. 20. Mr. Lyle was asked on a daily basis if he would "come eat" Ms. Anderson. *See* Ex. 1, Lyle Dep. 101, 105, 114, 115. Angela Anderson would tell Mr. Lyle he needed lessons on how to perform oral sex and she offered to teach him how to perform oral sex. *See* Ex. 2, Bey Dep. 19-20. Ms. Anderson even told Mr. Lyle to get a piece of fruit and practice having oral sex on the fruit. *See* Ex. 2, Bey Dep. 19.

One day while Mr. Lyle was working, Ms. Anderson forced herself onto him and kissed him against his will while he was working. *See* Ex. 1, Lyle Dep.106 ; Ex. 2 Bey Dep. 25-28; Ex. 3, Parker Aff. ¶ 5. After she did this, Mr. Lyle went to the men's room and vomited, and then he returned to the kitchen and complained to his manager. *See* Ex. 1, Lyle Dep. 107. There was no

corrective action taken as a result of Mr. Lyle's complaints.  *See* Ex. 1, Lyle Dep.110; Ex. 3, Parker Aff. ¶ 6; Ex. 4, Thompson Aff. ¶¶ 3-6.  Ms. Anderson's sexual comments continued unabated.  *See* Ex. 1, Lyle Dep. 118; Ex. 3, Parker Aff. ¶ 6.  A couple days after the incident Mr. Lyle complained again to management and no corrective action was taken.  *See* Ex. 1, Lyle Dep. 116; Ex. 4, Thompson Aff. ¶ 3.  Finally, weeks later when Mr. Lyle complained to Mark Gillenwaters,  a kitchen manager, his response to Mr. Lyle was to "get some f__king balls." *See* Ex. 1, Lyle Dep. 111.   Mr. Lyle then went to Devon Thompson, a kitchen manager, and complained about the sexual harassment, yet there was no corrective action taken as a result of Mr. Lyle's complaints.  *See* Ex. 1, Lyle Dep. 114-116; Ex. 4, Thompson Aff. ¶ 4.

In the mean time, Mr. Lyle's work performance was being affected.  *See* Ex. 1 Lyle Dep. 9-10; Ex. 3, Parker Aff. ¶  6.   After months of enduring the sexual harassment and having his complaints ignored, Mr. Lyle could no longer stand the hostile working environment, and in January 2001, he quit his position at ESPN.  *See* Ex. 1, Lyle Dep. 124. The reason he gave ESPN was that he could no longer tolerate the sexual harassment by Anderson. *Id.*

## A.  THE DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT BECAUSE RODNEY L. LYLE SUFFERED SEVERE AND PERVASIVE SEXUAL HARASSMENT

### Severe and Pervasive

In order to be actionable under Title VII, a sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so.  *Faragher v. City of Boca Raton*, 524 U.S.  775, 787, 118 S.Ct.  2275, 2283 (citing *Harris v. Forklift Systems, Inc*., 510, U.S. 17,

21-22, 114 S.Ct. 367, 370-371 (1993).  When determining whether an environment is sufficiently objectively hostile or abusive, courts are directed to look at  "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance."  *Id. (*citing *Harris, supra* at 23, 114 S.Ct. at 371); *see also Spicer v. Virginia, Dept. Of Corrections*, 66 F.3d 705, 710(4th Cir. 1995);  *Scannell v. Bel Air Police Dept.*, 968 F. Supp. 1059, 1063 (D.Md. 1997) (citing *Beardsley v. Webb*, 30 F.3d 524, 529 (4th Cir. 1994)).

   Common sense and an appropriate sensitivity to the social context will enable courts to distinguish between simple teasing or roughhousing and conduct which a reasonable person in the plaintiff's position would find severely hostile or abusive.  *Oncale v. Sundower Offshore Serv. Inc.*, 523 U.S. 75, 81, 118 S.Ct. 998, 1003 (1998). Courts must inquire if the facts as alleged go beyond mere offensiveness.  *EEOC v. R&R Ventures,* 244 F. 334, 340 (4th Cir. 2001).

   In conducting the subjective inquiry courts need only look at the testimony of the complaining witness.  *EEOC v. R&R Ventures,* 244 F. 334, 339 (4th Cir. 2001).

   In July 2000, Angela Anderson, one of Mr. Lyle's co-workers and a cook in the ESPN kitchen, started making sexual comments to Mr. Lyle on a daily basis. *See* Ex. 1, Lyle Dep. 100-101, 105; Ex. 2, Bey Dep. 18-20; Ex. 3, Parker Aff. ¶ 3.  When the sexual harassment directed at the Plaintiff began, Mr. Lyle was aware that Anderson had a reputation for taking men into the management office and having sexual relations with them.  *See* Ex. 3, Parker Aff. ¶ 4.  When Ms. Anderson began directing sexual comments to Mr. Lyle personally, she would tell Mr. Lyle

11

how sexy his lips were, ask him about oral sex, and ask Mr. Lyle to, "Come eat my pussy." *See* Ex. 1, Lyle Dep. 101 & 105; Ex. 2, Bey Dep. 18-19.  On a daily basis, Ms. Anderson would stand in front of Mr. Lyle and bend over, throw her leg up on the counter, and touch her toes. *See* Ex. 1, Lyle Dep. 105.  She would also say "I'm open, I'm closed."  *See* Ex. 1, Lyle Dep. 105.

From July 2000 to January 2001, Angela Anderson would tell Mr. Lyle on a daily basis he needed lessons on how to perform oral sex and offered to teach him how to perform oral sex. *See* Ex. 1, Lyle Dep. 101 & 105; Ex. 2, Bey Dep. 19.  Ms. Anderson even told Mr. Lyle to get a piece of fruit and practice having oral sex on the fruit.  *See* Ex. 2,  Bey Dep. 19.  During this period, Ms. Anderson repeatedly asked Mr. Lyle to "eat her" and she would also say, "if you don't know how to do it, I'll draw you a picture."  *See* Ex. 1, Lyle Dep. 101, 105, 115; Ex. 2, Bey Dep. 19-20.  She also asked him about his sex life with his wife, asking him, "Do you have oral sex with your wife?"  *See* Ex. 2, Bey Dep. 20.  On a daily basis, Ms. Anderson would make daily comments to Mr. Lyle, "Oh, look at your lips, I could do things with those lips," and ask him to  "Come eat [her] pussy."  *See* Ex. 1, Lyle Dep. 105, 114-115.

In the middle of August 2000, Ms. Anderson walked up to Mr. Lyle and touched him on the small of his back.  *See id.*   When Mr. Lyle turned around, Ms. Anderson grabbed both sides of his face, kissed him on the lips and forced a piece of candy from her mouth into his with her tongue.  *See id.*; Ex. 3, Parker Aff. ¶ 5.   Mr. Lyle was offended and humiliated, and immediately after the incident, Mr. Lyle became nauseated and vomited.  *See* Ex. 1, Lyle Dep. 107; Ex. 2, Bey Dep. 27. After Mr. Lyle returned to the kitchen, shortly after the kiss, Mr. Lyle was told by another cook, Germane, that Angela Anderson was in the office having oral sex with Ira, another ESPN employee.  *See* Ex. 2, Bey Dep. 26-28 & 86-87. *See also* Ex. 3, Parker Aff. ¶

12

4.

Mr. Lyle would repeatedly tell Ms. Anderson to stop, yet Ms. Anderson's sexually

harassing behavior only worsened.  *See* Ex. 1, Lyle Dep. 103-105 114, 198-199. This sexually

harassing behavior seriously affected Mr. Lyle's emotional well being and work performance.

*See* Ex. 1, Lyle Dep. 8-11, 148, 169. Mr. Lyle became depressed.  *Id.*  Moreover, Mr. Lyle would

get emotional and start shaking while at work when he heard Ms. Anderson's voice in the

morning. *See* Ex. 1, Lyle Dep. 169.

The sexual harassment inflicted upon Mr. Lyle was severe and pervasive. *See* Ex. 1, Lyle

Dep. 101, 105-106, 114, 115.   The constant sexual requests directed at Mr. Lyle literally caused

him to become sick and seek counseling.   *See* Ex. 1, Lyle Dep. 8-11, 148, 169.   Rodney Lyle,

Plaintiff, has demonstrated that the harassment interfered with his ability to perform his work,

and it significantly affected his psychological well-being.[1]  Therefore, Mr. Lyle has met his

burden of proof for showing the sexual harassment subjectively affected him. Not only was

Plaintiff seriously affected by the sexual harassment, but also a reasonable employee would be

significantly affected by such treatment.

The harassment by Ms. Anderson would interfere with the work performance or

significantly affect the psychological well-being of a reasonable person in the Plaintiff's

---

[1] Mr. Lyle went to a counselor in order to help in deal with his emotions after Ms.
Anderson kissed him against his will. *See* Ex. 1, Lyle Dep. 8 & 148, 169.  He went to the
Harford Medical Institute where Mr. Lyle was treated by a physician for depression. *See* Ex. 1,
Lyle Dep. 10-11. Mr. Lyle also saw a counselor at Harford Medical Institute six times. Ex. 1,
Lyle Dep. 9.  He did not feel like the counseling was helping, so the then turned to his Pastor,
Jamall Harrison Bryant, for guidance and therapy.  *See id.* at 8-10.

position.

The sexual harassment that Mr. Lyle experienced occurred on a daily basis for a period of over six months. *See* Ex. 1, Lyle Dep.  Upon examining all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the employee's work performance, ESPN is not entitled to Summary Judgment.  *Spicer v. Virginia, Dept. Of Corrections*, 66 F.3d 705, 710(4th Cir. 1995);  *Scannell v. Bel Air Police Dept.*, 968 F. Supp. 1059, 1063 (D.Md. 1997) (citing *Beardsley v. Webb*, 30 F.3d 524, 529 (4th Cir. 1994)). Mr. Lyle's deposition itself provides a genuine issue of material fact. *Harris v. Forklift Sys. Inc.,* 510 U.S. 17, 114 S. Ct. 367 (1993); *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399 (1986); *see also* Ex. 1, Lyle Dep.

ESPN should not be allowed to escape liability for Anderson's behavior. The facts as alleged go beyond mere offensiveness. *EEOC v. R&R Ventures,* 244 F. 334, 339 (4th Cir. 2001); *see also* Ex. 1, Lyle Dep.

### The Sexual Harassment Was Because of Sex

Title VII's prohibition of discrimination "because of sex" protects men as well as women. *Newport News Shipbuilding & Dry Dock. Co. v. EEOC*, 462 U.S. 669, 682, 103 S.Ct. 2622, 2630 (1983).   The critical issue is "whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Lack v. Wal-Mart Stores, Inc*., 240 F.3d 255 (4th Cir. 2001) (citing *Harris*, 510 U.S. at 25, 114 S.Ct. 367); *see also Oncale v. Sundowner Offshore Serv., Inc*., 523 U.S. 75, 118 S.Ct.

14

998, (1998).

The kitchen at ESPN was dominated by females. *See* Ex. 2, Bey Dep. 10. Mr. Lyle was harassed because of his sex. Ms. Anderson harassed the men at ESPN and Mr. Lyle because of an attraction to the opposite sex. *See* Ex. 1, Lyle Dep. 101, 114-115; *see also* Ex. 2, Bey Dep. 12. Ms. Anderson had a reputation for taking men into the management office and have sexual relations with them. *See* Ex. 3, Parker Aff. ¶ 4. Angela Anderson was observed "feeling up guys, touching and tickling the guys." *See* Ex. 2, Bey Dep. 12 & 17. The language Ms. Anderson used and her behavior with the guys was "too friendly." *See* Ex. 2, Bey Dep. 12. She did none of these things with women.

Angela Anderson constantly requested Mr. Lyle to have oral sex with her and made offers to give him lessons on oral sex. *See* Ex. 1, Lyle Dep.; Ex. 2, Bey Dep. Angela Anderson did not do this to females. Angela Anderson was motivated to harass Mr. Lyle because she was attracted to him. *See* Ex. 1, Lyle Dep. 114-115. Males at ESPN were exposed to terms and conditions of employment that females were not exposed to. *See Oncale v. Sundowner Offshore Serv., Inc.*, 523 U.S. 75, 118 S.Ct. 998, (1998); *see also* Ex. 1, Lyle Dep. 103; Ex. 3, Parker Aff. ¶ 3.

The Defendant argues that the comments of Anderson are those of an equal opportunity harasser and are not based on the sex of Lyle. The Defendant further argues that the comments of Anderson were merely vulgar banter, and, at best, teasing because of Lyle's personal view on cunnilingus.

These arguments must fail when the facts are viewed in a light most favorable to the

15

Plaintiff.  Anderson had a widely known propensity of having sex with male employees on the company premises.  There is no evidence that she had sex with any of the female employees.  Her invitations to Lyle to perform oral sex on her must be viewed as true entreaties, and not just teasing as characterized by the Defendant.  The thrusting of her tongue and the candy into Lyle's mouth is evidence of her desire to engage in sexual activity with him.  The record is devoid of any evidence that Anderson engaged in similar conduct with any other person, male or female.  Anderson either wanted to actually engage in sexual conduct with Lyle or wanted to humiliate him because of his sex.

It is further argued on behalf of Lyle that the remarks of Anderson to him about cunnilingus were directed to him solely because he was male.  Without quoting from various texts on human sexuality, it can be recognized that there are sexual activities that, depending upon a person's view, can be construed as liberal love making or perverted practices.  Male homosexuals, not possessing a vagina, may engage in fellatio; lesbians, not possessing a penis, may engage in cunnilingus to achieve sexual satisfaction.  There is no evidence that Lyle or Anderson are anything other than heterosexual.  Anderson's remarks prompted by Lyle's aversion to cunnilingus were directed to him solely because he was a male who was not interested in being involved in one of the aspects of possible sexual contact.

**B.   THE DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT BECAUSE ESPN IS LIABLE BECAUSE THE PLAINTIFF DID NOT FAIL TO REASONABLY PREVENT OR MITIGATE HARM.**

To escape liability, an employer must prove by a "preponderance of the evidence that the

plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275; *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257 (1998); *EEOC v. R & R Ventures*, 244 F.3d 334 ( 4th Cir. 2001); *Matvia v. Bald Head Island Mgmt*., 259 F.3d 261 (4th Cir.2001).   Proof that a Plaintiff employee failed to follow a complaint procedure will normally suffice to satisfy the employer's burden of the defense.  Such proof is not, however, the only way in which an employer can establish the second element. *Faragher, supra* at 808, 118 S.Ct. 2293   ("proof....is not limited to showing an unreasonable failure to use the complaint procedures.").

Immediately upon Mr. Lyle's return to the kitchen, after Anderson kissed him, Mr. Lyle went to Tara Gardner, his direct supervisor, and reported the sexual harassment and kissing incident. *See* Ex. 1, Lyle Dep. 107. After Mr. Lyle had reported what had occurred with Ms. Anderson, Ms. Gardner said that she and Ms. Anderson were not speaking, but Ms. Gardner assured Mr. Lyle that she would speak to the Head Chef, Mark Gillenwalters, about the sexual harassment.  *See* Ex. 1, Lyle Dep. 110.

Several days later, after no corrective action was taken and the sexual comments continued, Mr. Lyle went to Devon Thompson, his boss and complained about the sexual harassing behavior of Ms. Anderson.  *See* Ex. 1, Lyle Dep. 116; Ex. 4, Thompson Aff. ¶ 3. Again there was no investigation instituted or action taken, and Ms. Anderson's sexual comments continued.  *See* Ex. 1, Lyle Dep. 114-115; Ex. 4, Thompson Aff. ¶¶ 4-6.

Several weeks later, around the first week of September 2000, Plaintiff verbalized his

complaint directly to Mark Gillenwaters, the kitchen manager.  *See* Ex. 1, Lyle Dep. 111-113.

During the course of Mr. Lyle reporting what had been happening with Ms. Anderson, Mr.

Gillenwaters interrupted Mr. Lyle in mid-sentence and told him that he did not like people who

tried to play the victim and that Mr. Lyle needed to "get some f__king balls." *See* Ex. 1, Lyle

Dep. 111.  There were no corrective actions taken against Ms. Anderson, and the sexual

comments continued.

After Mr. Gillenwaters failed to take any action, Mr. Lyle went to Devon Thompson

again and reported that the sexual comments were continuing, and requested that he do

something about the situation. *See* Ex. 4, Thompson Aff. ¶ 4.  Again, no corrective action was

taken. *See* Ex. 1, Lyle Dep. 114, 115, 118.   *See* Ex. 1, Lyle Dep. 114-116; Ex. 4, Thompson Aff.

¶ 4.  Mr. Thompson observed that the sexual harassment by Anderson was still occurring, so he

spoke with Dexter Davis, another kitchen manager. *See* Ex. 4, Thompson Aff. ¶¶ 3 & 4.  Mr.

Thompson asked Dexter Davis if the sexual harassment had in fact been reported by Mr. Lyle.

*See* Ex. 4, Thompson Aff. ¶ 4.  Mr. Davis told Mr. Thompson that the sexual harassment had

been reported by Rodney Lyle.  *See id.* at 5.  However, Ms. Anderson's sexual behavior and

comments to Mr. Lyle continued.  *See* Ex. 1, Lyle Dep. 114-115; Ex. 3, Parker Aff. ¶ 6; Ex. 4,

Thompson Aff. ¶ 4-6.  Despite his objections and his complaints, Ms. Anderson's sexual

comments to Mr. Lyle continued. *See* Ex. 1, Lyle Dep. 114, 115, 118; Ex. 3, Parker Aff. ¶ 6.

The Defendant contends that In September 2000 Mr. Lyle received a promotion to team

leader/sous chef in training.  *See* Ex. 1, Lyle Dep. 101, 107-109, 113.  In July 2000 he was

informed that he was going to receive a promotion and pay increase to $12.50 per hour, but was

told that the promotion would not be effective until it was formally announced to the kitchen

team.  *See id.*  In fact, Mr. Lyle was told that he was not allowed to tell anyone that he was

promoted until he received a white sous chef jacket.  *See id.*  Managers and managers in training

at ESPN wore white jackets. *See* Ex. 1, Lyle Dep. 107-109, 200-201.  Mr. Lyle did not have any

authority to hire, fire or discipline his co-workers. *See* Ex. 1, Lyle Dep.  169-172.  Until

September 2000, he was wearing his black kitchen jacket and was not considered a management

employee. *See* Ex. 1, Lyle Dep. 109.   He did not have the authority to take any action against

Ms. Anderson when she kissed him against his will in the summer of 2000.  *See* Ex. 1, Lyle Dep.

107-109, 113, 200-201.

When Mr. Lyle received his white management jacket in the Fall of 2000, he was

considered a supervisor in training. *See* Ex. 1, Lyle Dep. 171.  As a supervisor in training, Mr.

Lyle still did not have any authority to take any disciplinary action against Ms. Anderson. *See*

Ex. 1, Lyle Dep. 169-172, 200-202.  A supervisor in training did not have any authority to write-

up or discipline employees.  *See* Ex. 1, Lyle Dep. 171-172, 201-202.

Mr. Lyle complained about the sexual harassment to Tara Gardner, Mark Gillenwaters,

Devon Thompson, and Dexter Davis.  *See* Ex. 3, Parker Aff. ¶ 4; Ex. 4, Thompson Aff. ¶¶  3-6*;*

Ex. 1, Lyle Dep. 107,  116, 118.   After Mr. Lyle complained to his immediate supervisor and his

complaints went unaddressed, Mr. Lyle went to his boss, Devon Thompson, another manager.

*See* Ex. 1, Lyle Dep.; Ex. 4, Thompson Dep. ¶¶ 3 & 4.  Mr. Devon Thompson was also Mr.

Lyle's boss. *See* Ex. 1, Lyle Dep. 116.  Mr. Lyle told almost every kitchen manager at ESPN

about how Ms. Anderson had been making sexual comments and had sexually assaulted him.

*See* Ex. 1, Lyle Dep. 116; Ex. 4, Thompson Aff.  ¶¶ 3&4.   No investigation was instituted and

no action was taken as a result of Mr. Lyle's complaints. *See* Ex. 4, Thompson Aff.  ¶¶ 4-6.  The

19

only response Plaintiff received was that he should "get some f__king balls..." *See* Ex. 1, Lyle

Dep. 111-113.   The sexual harassment by Angela Anderson continued. *Id.*

Starting in September 2000, Plaintiff started being sent home early by Tara Gardner and

Mark Gillenwaters.  *See* Ex. 1, Lyle Dep. 100 & 114.   The Plaintiff was most certainly being

retaliated against for complaining about sexual harassment by Ms. Anderson.

ESPN management officials were told about Ms. Anderson's sexually harassing conduct

in August 2000 and in September 2000. *See* Ex. 1, Lyle Dep. 107, 110, 111-113, 116; Ex. 4,

Thompson Aff. ¶¶ 3 & 4.  When the sexual harassment was not corrected by one manager Mr.

Lyle went to another manager. *See id.*  When the sexual harassment was still not corrected he

went to a third manager.  *See id.*  Based upon the fact, that Rodney Lyle reported the sexual

harassment on four different occasions, it has been shown that he attempted to take the necessary

steps to allow ESPN to take corrective measures but they failed to act as they were required

under the law. *Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275; *Burlington*

*Industries, Inc. v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257 (1998); *EEOC v. R & R Ventures*, 244

F.3d 334 ( 4th Cir. 2001);  *Matvia v. Bald Head Island Mgmt.*, 259 F.3d 261 (4th Cir.2001).

## C.  THE DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT BECAUSE ESPN IS LIABLE, AS IT TOOK NO REASONABLE STEPS TO PREVENT AND CORRECT THE SEXUAL HARASSMENT.

Employers are vicariously liable under Title VII for the tortious conduct of an employee

when the employer knew or should have known of the harassment.  *See Burlington Industries,*

*Inc. v. Ellerth,* 524 U.S. 742, 758, 118 S. Ct. 2257, 2267 (1998).  When the harasser is a co-

worker and not a supervisor, the employer is liable when it was negligent in failing, after actual or constructive knowledge, to take prompt and adequate action to stop the harassment. *Mikels v. City of Durham*, 183 F.3d 323, 332 (4th Cir. 1999); *see also Spicer v. Commonwealth of Virginia, Dept. of Corr.*, 66 F.3d 705, 710 (4th Cir. 1995).

In order to escape liability, the employer must prove that it exercised reasonable care in preventing and promptly correcting any sexually harassing behavior. *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.C. 2275 (1998); *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257 (1998).  The employer, as defined by Title VII, 42 U.S.C. § 2000e(b), knew or should have known of the harassment, and it should have taken effective remedial action. *Spencer v. General Elec*. Co., 894 F.2d 651, 658 (4th Cir.1990). *See also Henson v. Dundee*, 682 F.2d 897, 903-05 (11th Cir.1982).  The law "imposes a duty on the employer to take adequate steps to try to prevent...harassment, not merely to act after the event." *Paroline v. Unisys Corp*, 879 F.2d 100, 106 (4th Cir. 1989), *vacated and remanded on other grounds*, 900 F.2d 27 (4th Cir. 1990).

Responsible members of management at ESPN knew of the sexual harassment.  *See* Ex. 1, Lyle Dep 106, 110-111, 116; Ex. 3, Parker Aff. ¶ 6; Ex. 4, Thompson Aff. ¶¶ 3 & 4. There is no doubt that ESPN knew that there was a complaint of sexual harassment by Rodney Lyle because Mr. Lyle complained to management at least four times. *Id.*  However, ESPN did not take any action to correct the sexually harassing behavior of Angela Anderson.  The only response Mr. Lyle received was that he should "get some f__king balls." *See* Ex. 1, Lyle Dep. 111.

21

A reasonable employer in ESPN's position would have known about the sexual harassment and would have taken some corrective action. If ESPN had shown reasonable care for what was going on in the workplace it would have known about the sexual harassment Mr. Lyle was experiencing. ESPN did not comply with the standards of law to correct the sexual harassment, and ESPN should be held vicariously liable to Rodney Lyle for the hostile work environment created by Angela Anderson. *Id.*

### No Effective Sexual Harassment Policy

The employer must act reasonably and any anti-harassment policy adopted by the employer must be both reasonably designed and reasonably effectual. *See Brown v. Perry*, 184 F.3d 388 (1999) (citing *Faragher, supra*, at 808, 118 S.Ct. at 2293-94). An employer will not be shielded from liability when the employer's sexual harassment policy was adopted or administered is in bad faith, and the policy was otherwise defective or dysfunctional. *Barrett v. Applied Radiant Energy Corporation*, 240 F.3d 262, 266 (4th Cir. 2001) (citing *Faragher, supra* at 808, 118 S.Ct. at 2293).

Prior to the commencement of his employment with ESPN, Lyle was given a packet of paperwork to fill out and return to ESPN. *See* Ex. 1, Lyle Dep. 68. One of the papers he signed said that he received an employee policy handbook. *See* Ex. 1, Lyle Dep. 68. However, Mr. Lyle, Plaintiff, did not receive a policy manual in his packet. *See* Ex. 1, Lyle Dep. 68. Upon noticing that the policy manual was not in the packet and realizing that he had signed a paper saying that he received a policy handbook, he immediately requested one from Marcus Woodard. *See* Ex. 1, Lyle Dep. 68-69, 71. He was told that ESPN had just done a "mass amount of hiring"

22

and that they ran out of handbooks. *See* Ex. 1, Lyle Dep. 68.  Mr. Lyle went back to the

management office several times during his first couple months at ESPN and asked for an

employee handbook. *See* Ex. 1, Lyle Dep. 68-69. He was always told by Marcus Woodard that

they did not yet have them.  *See* Ex. 1, Lyle Dep. 69.

The Human Resource Office did not open at the Baltimore ESPN until August 2000. *See*

Ex. 1, Lyle Dep. 72.  In August 2000, Mr. Lyle, Plaintiff, requested an employee handbook from

Pam Shepard. *See* Ex. 1, Lyle Dep. 72.  He was told that she would "try" to get him one.  *See* Ex.

1, Lyle Dep. 72. He never received an employee handbook.  *See* Ex. 1, Lyle Dep. 72.

There was no effective sexual harassment policy in place at ESPN in Baltimore.  When

Mr. Lyle was hired, he received no information regarding a sexual harassment policy. *See* Ex. 1,

Lyle Dep. 68-69, 71 & 72.  Mr. Lyle was simply told to sign a piece of paper stating he received

a sexual harassment policy, yet despite his many requests for a policy manual he never received

any information about sexual harassment.  *See id*.   This is absolutely evidence that the sexual

harassment policy was administered in bad faith.

Defendant argues that Mr. Lyle went to one employment discrimination seminar in

January 2001, which is 5 months after Ms. Anderson sexually assaulted Mr. Lyle. The Defendant

cannot ignore complaints of sexual harassment and escape liability by sending employees to a

seminar on sexual harassment five months after the sexual harassment complaint.  The

affirmative defense is not available to ESPN.  Any sexual harassment policy that ESPN now

claims it has adopted or administered is in bad faith, and the policy was otherwise defective or

dysfunctional.

**CONCLUSION**

In conclusion, based on the arguments set forth above and the cited case law, summary judgment should not be granted to the Defendant, ESPN.

WHEREFORE, Plaintiff, Rodney Lyle, respectfully requests that the Defendant's Motion for Summary Judgment be DENIED.

Respectfully submitted,

EDELSTEIN & RADFORD

/s/

_____

Morton Edelstein
Federal Bar No.: 01339
110 St. Paul Street, Suite 402
Baltimore, MD 21202
410-685-0770

Attorney for the Plaintiff

Dated: July 17, 2003