IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | |
|---|---|
| RODNEY LYLE, | * |
| Plaintiff, | * |
| v. | *    Civil Action No: WDQ-02-2075 |
| ZONE ENTERPRISE OF MARYLAND, LLC | * |
| Defendant. | * |

\* \* \* \* \*           \* \* \* \* \*

**DEFENDANT ZONE ENTERPRISES OF MARYLAND LLC'S
<u>MEMORANDUM IN REPLY TO PLAINTIFF'S OPPOSITION</u>**

Defendant Zone Enterprises of Maryland, LLC ("ESPN") filed a Motion for Summary Judgment on June 10, 2003, as to Plaintiff Rodney Lyle's sole claim of sexual harassment under Title VII of the Civil Rights Act. On July 17, 2003, Plaintiff filed an Opposition to Defendant's Motion challenging Defendant's contention that the alleged conduct did not meet the legal standard for actionable harassment, and applying the incorrect legal standard regarding the applicable defenses. This Reply Memorandum is submitted in response to Plaintiff's Opposition and in further support of Defendant's initial Motion.

<u>**RESTATEMENT OF THE CASE**</u>

In his Opposition, Lyle tries to impart an image of a female dominated work place in which the alleged harasser, Angela Anderson, engaged in a daily course of sexual comments, touching and sexual acts in the ESPN kitchen. He further claims that he was left adrift in this

atmosphere with no recourse because ESPN never provided him with a copy of its sexual harassment policy, and that all of his alleged complaints about Anderson's conduct fell on deaf ears.

While it is true that the party opposing summary judgment is entitled to all inferences drawn in his favor, such inferences must still be fairly drawn from the record in the case. Simply put, as noted below, the record in this case does not support the picture that Lyle has drawn.[1]

Lyle was hired by ESPN in December 1998, almost two years prior to the alleged harassment at issue. By his own account, Anderson's allegedly offensive conduct did not begin until late July 2000, well after Anderson was hired, and around the same time period that he received a promotion. Per Lyle's testimony, the alleged conduct initially consisted of Anderson teasing Lyle about his dislike of oral sex, which continued for approximately two to three weeks. In mid August, in what Lyle called the "final incident", Anderson grabbed his faced and forced candy from her mouth into his own.

While he denies any knowledge of ESPN's sexual harassment policy, despite a Company handbook and posters, Lyle was no stranger to bringing complaints about his pay and benefits to management and human resources. Yet, prior to this candy incident, Lyle

---

[1] Lyle submitted two affidavits in support of his Opposition from cook Keith Parker and banquet chef Devon Thompson. Sections of these affidavits are referenced herein as "Parker Affidavit ¶__" and "Thompson Affidavit ¶__".

2

never complained to any manager about Anderson's comments. Moreover, when he did ultimately complain about Anderson's comments, by his own account, he only mentioned the candy incident. Lyle's only other complaint, again drawing the evidence in his favor, was to a banquet chef, two weeks after the candy incident. Like his prior complaint, this account never mentioned the comments.

Following his alleged complaint about the candy, Anderson never again touched Lyle. While he claims that the comments about oral sex continued, Lyle never complained about these remarks. In January, 2001, Lyle got into a brief argument with Anderson about her newspaper, in which the terms "bitch" and "n--ger" were used. When his supervisor Tara Gardner overheard the epithets, she directed Lyle to come into the management office. Lyle refused. He claims to have returned the next day to check on his eligibility for benefits. Upon learning from Human Resources that he was not eligible, Lyle quit his job.

## ARGUMENT

I. **Plaintiff Has Not Stated A Claim For Actionable Harassment**

    A.    <u>Lyle still has not shown that the Alleged Conduct was "Based on Sex"</u>

In *Oncale v. Sundowner Offshore Services, Inc.* 523 U.S. 75, 118 S.Ct. 998 (1998), the Supreme Court made clear that it is not enough that the challenged conduct be sex specific. Rather, as a hostile work environment claim is, at its core, a sex discrimination claim, a male plaintiff must establish that the harasser discriminated against him, *i.e.* treated him differently or with greater hostility, because he is a man. The critical issue in this case is whether members of one sex are exposed to disadvantageous terms or conditions of employment to

which other members of the opposite sex are not exposed.  *See Lack v. Wal Mart Stores, Inc.*, 240 F.3d 255, 260-262 (4th Cir. 2001).[2]

In challenging Defendant's contention that the alleged harassment was not based on sex, and therefore not unlawful, Lyle offers a vision of a work environment where females dominate through intimidation and sexual favors.  Nothing in the record, however, supports this caricature.  For example, Lyle contends that the kitchen at ESPN "was dominated by females."  Yet the cited testimony refers only to Bey's observation that there were "women in leadership positions" at ESPN, and that there were a "lot of hardworking people" who were "pretty close knit." Bey Dep. 10.  Likewise, employees, both male and female, discussed sexual topics in the kitchen.  Bey Dep. 13, 19-20 (reference to "co-workers"), 24.

Lyle also tries to paint Anderson as a sexually aggressive individual who targeted the male employees.  Again, one claim used to support this argument is the  assertion that Anderson had a "reputation" for having  sex with male employees in the "management office."  Beyond a single inadmissible hearsay statement in an affidavit, however, no evidence is offered to support this characterization.  *See Parker Affidavit*, ¶4; *Evans v. Technologies Applications & Service Co.*, 80 F.3d 954, 962 (4th Cir 1996) ("evidence submitted in opposition to summary judgment motion must be admissible and based on personal knowledge.").  *See also*

---

[2] On July 18,2003, the U.S. Court of Appeals for the Fourth Circuit issued an *en banc* decision in *Ocheltree v. Scollon Productions, Inc.*, Case No. 01-1648, reversing the panel decision cited in ESPN's initial motion. 308 F.3d 351 (4th Cir. 2002).  In reversing the panel, the Court found that Ms. Ocheltree, as the sole female employee in a male workforce, was subjected to an extensive litany of comments and conduct specifically directed at her because of her sex and intended to "make her uncomfortable and self conscious as the only woman in the workplace."  Slip Op. at 9.  This reversal does not affect ESPN's argument, as, in contrast to the present situation, Lyle was not the

*Persley v. National RR Passenger Corp.*, 831 F.Supp 464 (D.Md. 1993) (rejecting "reputation" evidence offered to support claim employer knew of propensity of employee to commit sexual assault).

As for his assertion that Anderson's sexual comments and touching targeted the male employees exclusively, Lyle's own testimony is the most effective rebuttal:

> A.  [Lyle] She would bend over, throw her leg up on the counter, touch her toes, walk by and say I'm open, I'm closed, I'm open, I'm closed. She would tell me things like this, excuse me to the women in the room, come eat my pussy.
>
> Q.  And she said that to other men too?
>
> A.  <u>She would say that to anybody, it didn't make a difference with her</u>.

Lyle Dep. 105-106 (emphasis supplied). Bey likewise conceded that Anderson engaged in sexual banter with and regularly touched the female employees: "[s]he hit one woman on the butt. Touch them. Poke them. She's very affectionate, hug, kiss." Bey Dep. 15-16.[3]

Even with respect to the alleged remarks that Lyle asserts were directed specifically at him, there is no reason to assume that Anderson's comments were motivated by an intent to single out and discriminate against Lyle because of his sex as opposed to sexually related teasing or horseplay.[4] *See McWilliams v. Fairfax Co. Board of Supervisors*, 72 F.3d 1191, 1196 (4th Cir. 1996); *Parker Affidavit* ¶5 ("Everyone in the kitchen laughed and cheered").

---

sole male employee and virtually all of the described comments and touching were equally directed at male and female employees.

[3]  Bey also described instances in which she witnessed Anderson tickle Lyle. When asked if she ever witnessed Lyle tell her to stop it, she replied: "No, she treated him like a friend and. No. In answer to your question, No." Bey Dep. 74.

[4]  As Bey noted:

Weighed against the above testimony, the additional claim that Anderson's sexual comments were motivated by an "attraction" to him, or that he was exposed to conditions of employment to which females were not exposed, is simply specious. Read in a light most favorable to Lyle, the admissible evidence presented in support of his claim demonstrates no more than that Anderson made frank sexual comments to and touched both male and female employees. Such evidence cannot satisfy the requirement of Title VII that the alleged conduct be based on sex. *See Lack*, 240 F.3d at 261-262 (plaintiff acknowledged that harasser did not limit his jokes, lewd behavior or sexual attention to him individually or to men more generally, and was insufficient to support a theory of sexual solicitation).

      B.     <u>Lyle has not demonstrated that the conduct was "Severe and Pervasive"</u>

Title VII prohibits only harassing behavior that is so severe or pervasive as to render the workplace objective hostile or abusive. The Supreme Court has repeatedly made clear that "simple teasing, offhand comments and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275 (1998). Not all sexual harassment, moreover, is actionable. Title VII was not intended to "purge the workplace of vulgarity" or implement a civility code. *Hopkins v. Baltimore Gas & Elec. Co.*, 77 F.3d 745, 753 (4th Cir. 1996). Conduct that does not unreasonably interfere with an individuals work performance or result in other

---

> At first he [Lyle] was candid because they would ask – Angela asked him specifically, do you have sex, oral sex with your wife. And he answered her candidly. But then it turned into making fun of him.

Bey Dep. 20.

serious harm, is not sufficiently severe or pervasive that a reasonable person would find the conduct hostile or abusive.

As noted above, Lyle's Opposition simply reiterates the various allegations of sexually offensive conduct, but neglects the overall context of the remarks and the time period over which they occurred. Parker's Affidavit, for example, adds nothing more than that Anderson "often talked about sex" and made vaguely defined "sexual comments" to the male employees, including Lyle. *Rohrbough v. Wyeth Laboratories, Inc.*, 916 F.2d 970 (4th Cir. 1990) (conclusory assertions in an affidavit cannot be used to defeat summary judgment). These factors of context and duration are significant, however, to assessing the objective severity of any allegedly harassing conduct. *Oncale*, 523 U.S. at 81, 118 S.Ct. at 1003 (inquiry requires "consideration of all of the circumstances"). When the overall context of the alleged conduct is considered, Lyle's claim must fail.

At most, the only comments and conduct which Lyle identifies as directed specifically at him, are too limited in scope and duration to reasonably be said to create an offensive working environment. The comments which form the crux of Lyle's claim were, in fact, limited in time frame of little more than a week according to Bey, and only a span of about two or three weeks according to Lyle.[5] Lyle himself testified that the kiss was the "final incident" and according to his testimony it was the only conduct by Anderson that he reported. *Compare*

---

[5] It was within this context – and only this context -- that the alleged comments about Lyle needing "lessons" and practicing on a "piece of fruit" were made. Bey Dep. 19-20

*Ocheltree*, Slip Op. 9-10 (specific and extensive sexual conduct directed exclusively at Ocheltree evidencing hostility toward her as sole female in the workforce).

The relevance of "context" was specifically highlighted in *EEOC v. R&R Ventures*, 244 F.3d 334 (4th Cir. 2001), which is cited by Plaintiff. In stark contrast to the present case, the court found that the "context" in that case compounded the severity of the alleged conduct, noting:

> Throughout his campaign of torment, Wheeler was an adult male in a supervisory position over young women barely half his age. And he is alleged to have engaged in a systematic effort to cripple the self-esteem of the teenagers who assisted him in the store.

*Id.* At 340. Herein, Lyle is an adult male and not a subordinate to Anderson. In fact, at the time he had been effectively advised of his promotion. There is also ample evidence of frank sexual discussion by all employees in the kitchen and the nature of the comments to which Lyle allegedly took offense were limited.

Moreover, despite Lyle's allegations that Anderson continued her sexual comments on a daily basis thereafter, he never reported the comments and there is simply no evidence that they interfered in any way with his work performance. At most, he states that he was upset by Anderson's comments, was "nauseated" by the kiss, and that her continued remarks following the kiss made him "uncomfortable" and "nervous." Lyle Dep. 169.[6] Lyle continued as the lead

---

[6] The record citations at page 10 of the Opposition offered to support Lyle's claim that his work performance were affected refer only to counseling he attended after he quit ESPN, and a generalized statement in an affidavit that "the sexual comments were affecting Rodney [Lyle] more and more." Lyle Dep. 8, 148; Plaintiff's Answer to Interrogatory No. 10, Lyle Dep. Ex. at 22. This vague and generalized observation has no evidentiary value in response to a summary judgment motion. *Rohrbaugh*, 916 F.2d 970 (conclusory statements in affidavits are not admissible in summary judgment proceedings).

8

line cook, however, and per the two affidavits submitted in support of his opposition, he was a "model employee" who conducted himself in a professional manner at all times. *Thompson Affidavit*, ¶7; *Parker Affidavit*, ¶7 (mistakenly numbered as ¶6). Although he received disciplinary warnings in August and September 2000, Lyle draws absolutely no connection between these performance issues and the alleged harassment. Lyle Dep. Ex. 12.

Lyle's strong emphasis in his Opposition, on the sexual comments, particularly those that relate to his aversion to oral sex, is even more unusual when considered against his more contemporaneous statements to both the Maryland Commission on Human Relations ("MCHR") and the Unemployment Insurance Appeals Division. There is not a single reference in these documents to any of these alleged remarks prior to the incident with the candy. Indeed, in his charge of discrimination, Lyle refers to the sexual harassment complaint he "lodged" against Anderson in August 2000, with the alleged verbal harassment beginning "shortly thereafter." Lyle Dep. Ex. 16. In the letter Lyle wrote to the MCHR requesting reconsideration of the No Probable Cause finding, Lyle Dep. Ex. 17, there is not a single reference to any sexual comments whatsoever. Lyle Dep. Ex. at 18. See also Lyle Dep. Ex. at 15 (Unemployment decision).

Indeed, even the affidavit of Devon Thompson submitted in support of Lyle's Opposition limits the alleged harassment to the candy incident, and makes no reference to any of the alleged comments which preceded it. *See Thompson Affidavit*, ¶¶3-4 (referring to harassment as Anderson kissing Lyle without his consent). One can fairly assume that if the conduct preceding the alleged candy incident was so severe and pervasive, Lyle would have

9

mentioned it to the MCHR when it was fresh in his mind and they were investigating his claim. Curiously, Lyle also testified at one point that the time he received his white Line Leader jacket, Anderson's conduct had largely stopped. Lyle Dep. 169-170 ("I got my white jacket after what she did to me.")

In short, at the core of Lyle's case is the alleged kiss, which he claims he reported, and after which Anderson never touched him again. This event, either standing alone, or in conjunction with the alleged sex-related comments which Anderson levied on male and female employees alike, (and which he never reported), cannot pass muster under severe and pervasive tests of Title VII.

## II. **Plaintiff Misstates The Applicable Law Regarding Employer Liability**

    A.    <u>ESPN is not obligated to prove an Affirmative Defense</u>

Lyle's Opposition incorrectly states the burden of proof in this case as the standard laid out in *Faragher*, 524 U.S. 775, 118 S.Ct. 2275, and *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257 (1998), for instances of harassment of a subordinate <u>by a supervisor</u>. As noted in ESPN's initial memorandum, however, this case presents the unusual circumstance of <u>a subordinate employee allegedly harassing a superior</u>. Thus, the affirmative defense of *Faragher* and *Ellerth* is not applicable to this case and Plaintiff's exposition on ESPN's alleged obligation to prove either that it had implemented sexual harassment policy or that Plaintiff acted unreasonably or failed to avoid harm, (Opposition pp 17-20), is beside the point.

This case presents at most, as one of "co-worker" harassment. In such a case, an employer may only be liable for the allegedly harassing acts of a co-employee where it knew

or should have known of such alleged harassment and failed to take prompt remedial action. *Mikels v. City of Durham*, 183 F.3d at 323, 332 (4th Cir. 1999). This standard differs from the affirmative defense provided to an employer in a supervisory situation in that, <u>at all times, the plaintiff bears the burden of proof as to the propriety of the employer's response, and the employer has no corresponding burden of persuasion.</u> *See Swinton v. Potomac Corp.*, 270 F.3d 794, 803-04 (9th Cir. 2001). In order to avoid judgment on his claim, the employee must either demonstrate either that "the employer provided no reasonable avenue for complaint or knew of the harassment but did nothing about it." *Id*. at 803. Despite Lyle's argument's to the contrary, he has met neither burden.

ESPN has a defined procedure for the handling of sexual harassment complaints set forth in its employee handbook. Lyle Ex. 9. Specifically, the policy requires that "Employees who believe that they have been harassed should promptly report the facts of the incident and the name of the person involved to the Human Resources or Equal Opportunity Program Departments." *Id*. Lyle's claim that he was unaware of ESPN's sexual harassment policy is simply unavailing on this point. Despite his claim that he never received a handbook, he clearly signed a receipt acknowledging receipt of one when he was hired. Lyle Dep. Ex. at 10. Other employees also acknowledge receiving the handbook, attending training and being aware of the Company policy. Bey Dep. 61-65. Lyle's allegations of "bad faith" are, in this context, simply meritless.

The Company's sexual harassment policy was displayed on a poster in the employee break room. Lyle Dep. 65-66. The poster not only reiterated the company's prohibition of

sexual harassment, but also provided information on making complaints, and provided employees with a phone number to call. Lyle Dep. 66; Bey Ex. 2. Employees of ESPN were also given periodic training on sexual harassment issues and to emphasize the Company policy. Bey attended two of these sessions. Bey Dep. 71.

Finally, at the time the alleged harassment was occurring, ESPN had a Human Resources manager – Pam Shepard -- on-site. Lyle Dep. 72. Lyle was well familiar with Shepard, as he visited her on several occasions both to request the handbook he claims to have never received, and to complain about his reduced hours and ineligibility for benefits. Lyle Dep. 72, 123, 139. [7] In fact, when the HR position was announced, Lyle testified that he was told "<u>from now on if you have any issues you go to HR</u>." Lyle Dep. 73. Although Lyle complained about many other issues to HR, he never mentioned to them the alleged harassment. Lyle Dep. 116-118.

There can be no dispute, therefore, that ESPN provided its employees with an avenue for pursuing complaints. That Lyle chose not to use these avenues cannot result in liability for ESPN. *Woods v. Delta Beverage Group, Inc.*, 274 F.3rd 295, 300 (5th Cir. 2001) ("To avoid further harm…Woods needed to reasonably take advantage of the corrective opportunities provided by the employer").

    **B.**    <u>Lyle failed to report Any of the alleged sexual comments</u>

Lyle makes several claims in his Opposition that he reported Anderson's "sexually harassing" conduct and comments to at least three supervisors. Opposition, 17. A careful

12

review of his testimony, however, shows only two complaints, both limited to the alleged kissing, and both relatively proximate in time. There is no evidence that Lyle made a single complaint about the alleged verbal harassment.

Specifically, according to Lyle, immediately following the candy incident, he "came back downstairs and told my supervisor what happened to me." Lyle Dep. 107. There is no indication that he said anything about the alleged comments. Approximately a week later, Lyle claims he told Devon Thompson about "what happened to [him]" while Devon was on vacation. Lyle Dep. 116.[8] Again, the clear implication of his testimony is that Lyle made no mention of any of Anderson's alleged comments, focusing instead solely on the alleged kiss.[9] *Thompson Affidavit* ¶3 (equating "harassment" with kiss "incident"). There is also nothing in Lyle's testimony that the reason he told Thompson about the incident because "no corrective action was taken." Opposition, at 17. Rather, the reason given by Lyle in deposition was that Thompson was on vacation the prior week when the incident occurred. Lyle Dep. 116. *See Thompson Affidavit* ¶3 ("The harassment did not occur while I was working…").

While Lyle claims that there was no investigation or corrective action taken, his testimony is clear on several significant points. First, following his complaint about the candy

---

[7] Lyle also complained to "upper management" once about Gardner being disrespectful to him. Lyle Dep. 135.
[8] Lyle: "… I told Tara, nothing was done, the next week Devon came back, I went to him because I trusted him as my boss and said hey, Devon, this happened to me while you were gone. He said okay, I'm going to talk to Tara. He talked to her and she told me well, since you already told Tara it's not necessary for me to get involved, Gilly and Tara will handle it." Lyle Dep. 116.
[9] Lyle's evidence that he told Dexter Davis of the harassment, by way of hearsay in the affidavit of Devon Thompson, is inadmissible and may not properly be considered in response to a motion for summary judgment under Rule 56(e). *Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996); *Sterling Acceptance*

incident, Anderson never touched him again. Lyle Dep. 114, 118. Second, although the alleged sexual comments continued, Lyle did not make a single complaint about this conduct, either to the HR manager, Pam Shepard, or to any of his managers. Lyle Dep. 117-118. Instead, Lyle simply told Anderson "I'm not into that hoping she would get the picture." Lyle Dep. 115.

Nor may Lyle rely on general knowledge of sexual talk in the kitchen to claim knowledge of the specific and individualized conduct which Lyle claims occurred. Bey testified that the managers, though aware of sexual banter, were careful to ensure that the conduct remained within proper bounds: "And it seemed to me that they have accepted some of the talk as long as it doesn't get too far or doesn't offend anybody, it's all right." Lyle Dep. 109. See also Lyle Dep. 111-112. Bey herself never bothered to lodge a complaint about the sexual talk, nor did either of the two individuals who have provided affidavits to support Lyle's Opposition.[10]

Finally, Lyle repeatedly references a conversation with Mark Gillenwalters, the chef, which he claims occurred in late August or early September. In essence, Lyle testified that he

---

*Corp. v. Tommark, Inc.*, 227 F.Supp. 2d 454, 459 (D. Md. 2002); *Johnson v. Runyon*, 928 F.Supp. 575, 584-85 (D. Md. 1996)

[10] Keith Parker states that he did not report the conduct he allegedly witnessed, because he was purportedly afraid he would "lose my job". Not only is there no evidence that any such thing would happen if Parker did report what he observed, but this Circuit has disregarded such an excuse for failing to report allegedly offensive conduct. *Matvia v. Bald Head Island Management, Inc.*, 259 F.3d 261 (4th Cir. 2001), *quoting Barrett v. Applied Radiant Energy Corp.*, 240 F.3d 262, 267 (4th Cir. 2001) ("The reporting requirement is so essential to the law of sexual harassment that we 'have refused to recognize a nebulous fear of retaliation as a basis for remaining silent.'"). His assertion that Anderson had a "reputation" for taking men into the management office for sex is simply inadmissible hearsay, evidently based on rumor and not personal knowledge. *Sterling Acceptance*, 227 F.Supp 2d at 459; *Szot v. Allstate Ins. Co.*, 161 F.Supp 2d 596 (D.Md. 2001) (hearsay insufficient to oppose summary judgment).

14

was called into the manager's office with Gillenwalters and Gardner and asked what the problem was with Anderson. When he started to speak, Gillenwalters purportedly interrupted him and said "I made you the supervisor and if you can't handle it, I'll find somebody else that will. You need to get some fucking balls and stand up to the folks around here or else you're not going to be a supervisor in my kitchen." Lyle Dep. 111. Lyle claims he was so angry with Gillenwalter's comment that he walked out of the office.

In their proper context, however, Gillenwalter's comments (assuming they occurred at all) are nothing more than an admonition to Lyle to do his job. He was, despite a circuitous effort to deny any responsibility, Anderson's first level of supervision. Lyle testified that, in the past, at a prior job when dealing with another incident involving a subordinate making passes at him, he was also told that he needed to exercise his supervisory authority. Lyle Dep. 19-20.

Nevertheless, accepting, for summary judgment purposes, that he had complained about the kiss, Lyle conceded that, thereafter, Anderson never touched him again. ESPN also provided Lyle with the alternative option to go to Human Resources to voice his complaint about the comments, yet he never did so.[11] Gillenwalter's alleged remark about getting "fucking balls" had no bearing on this failure on Lyle's part. Lyle Dep. 116-117.

---

[11] Although Lyle was promoted in July to Lead Line Cook, he claims that the promotion was not announced for over two months, and that he was told to remain quiet and not mention the promotion to anyone. Conveniently, this period of compelled silence fits neatly over the time period of the most serious alleged harassment by Anderson, thereby avoiding the obvious difficulty of answering how a supervisor could be meaningfully harassed by a subordinate. The effort he expends in denying that he was effectively Anderson's superior seems only to highlight Lyle's inability to accept the responsibilities of his position. See Lyle Dep. 107-109, 169-170.

**III.   Plaintiff Does Not Oppose Defendant's Motion For Summary Judgment on the Claim For Back Pay.**

Defendant ESPN also moved for summary judgment with respect to Lyle's back pay claim, on the grounds that Lyle was not constructively discharged, and therefore not entitled to any award of lost earnings. Lyle does not oppose this part of ESPN's motion in his Opposition. Accordingly summary judgment on this part of Lyle's claim is proper.[12]

## CONCLUSION

Wherefore, Defendant Zone Enterprises, LLC, submits that summary judgment is appropriate as to Plaintiff Rodney Lyle's claim of sex discrimination, and that his claim should be dismissed in its entirety, with prejudice.

Respectfully submitted,

_____/s/_____
Kevin C. McCormick, Bar # 7674
Melissa L. Menkel
Whiteford, Taylor & Preston L.L.P.
Seven Saint Paul Street
Baltimore, Maryland 21202-1626
(410) 347-8700

Counsel for Defendant
Zone Enterprises of Maryland, L.L.C.

---

[12] In the midst of his Opposition, Lyle does make the outrageous assertion that he was sent home early in retaliation for his alleged complaints about Anderson. Opposition, at 20. Not only does Lyle nowhere claim in his deposition that he was retaliated against due to his alleged complaints, Lyle Dep. 137, 140-141, but most significantly, he specifically stated in his answers to Defendant's interrogatories that he was **not** asserting **any** claim of retaliation. Plaintiff's Answer to Interrogatory No. 2, Lyle Dep. Ex. at 22.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 31st day of July 2003, a copy of the foregoing Defendant Zone Enterprises of Maryland LLC's Memorandum in Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment were served electronically and/or by first class postage to:

>Morton Edelstein, Esquire
>Edelstein and Radford
>Suite 402
>110 Saint Paul Street
>Baltimore, Maryland 21202
>(410) 685-0770
>
>Attorney for Plaintiff
>Rodney Lyle

>_____/s/_____
>Kevin C. McCormick

*1506455*