IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

                                     *

RODNEY LYLE,                   *

     Plaintiff,         *

v.                       *   CIVIL ACTION NO: WDQ-02-2075

ESPN ZONE,              *

                                     *

     Defendant.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

<u>MEMORANDUM OPINION</u>

Pending is a motion for summary judgment filed by Defendant ESPN Zone.[1]  For the following reasons, the motion will be denied.

I.  Background

Plaintiff Rodney Lyle began working at ESPN Zone as a cook on December 16, 1998.  Memorandum in Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Opp.") at 9.  Lyle never received an Employee Handbook outlining ESPN Zone's sexual harassment policy, though he signed a form indicating receipt of the handbook at the beginning of his employment.  Opp. Ex. 1 at 66-69.  Lyle's complaint regards the actions of Angela Anderson, a co-worker in the kitchen.  Opp. Ex. 1 at 100.

Beginning in the summer of 2000, Anderson made sexually

---

[1] This case is styled *Rodney Lyle v. ESPN Zone*.  Defendant refers to itself in its motions as Zone Enterprises of Maryland, L.L.C.  The style of the case will remain in its present form until the plaintiff amends his complaint.

explicit comments and sexual proposals to Lyle. Opp. Ex. 1 at 100, 105. Anderson also touched Lyle once a week or more. Opp. Ex. 2 at 13. Anderson's activities were not entirely aimed at Lyle, who indicated that "[s]he would do it to other guys . . . [who] would play along with it, I never played along." Opp. Ex. 1 at 103. Anderson's conduct continued after Lyle told her to stop. *Id.* Co-worker Keith Parker has testified that Anderson made sexual comments to Lyle on a daily basis and that Lyle "would get embarrassed and try to ignore her." Opp. Ex. 3 at ¶ 3.

Anderson made crude comments and gestures about sexual acts to other men and women in the kitchen. *Id.* at 105-06. She also touched other male and female employees. Opp. Ex. 2 at 12. Many of the other kitchen employees spoke openly about sexual topics. *Id.* at 13, 22.

In mid-August 2000 Lyle asked Anderson for a piece of candy. Opp. Ex. 1 at 106-07. Anderson responded to Lyle's request by touching his back, grabbing his face, "slamming her mouth" onto his, and forcing the candy from her mouth into Lyle's in front of the kitchen staff. *Id.* Work came to a halt while the kitchen employees stared at each other in silence. Opp. Ex. 2 at 26.[2] One of the employees then told Lyle that Anderson had just had oral sex with another male employee immediately prior to the incident. *Id.*

---

[2] Parker has testified that "[i]f [Anderson] had done that to me, I would have been infuriated." Opp. Ex. 3 at ¶ 5.

at 26-27. In response, a "flushed" Lyle ran to an upstairs bathroom where he washed out his mouth and vomited. *Id.* at 26-27; Opp. Ex. 1 at 107.[3]

Lyle reported the incident to his supervisor, Tara Gardner, that day. Opp. Ex. 1 at 107. Gardner told Lyle that she had been in an altercation with Anderson and was not speaking to her, but would inform Chef Mark Gillenwaters, the highest kitchen supervisor, about the incident. *Id.* at 110. Several weeks later, Gardner, Gillenwaters, and another supervisor, Devon Thompson, met with Lyle about the incident. *Id.* at 110-11. When Lyle began to talk about it, Gillenwaters stopped him and told him not to "play the victim." *Id.* at 111. Gillenwaters continued, "I made you a supervisor, if you can't handle it, I'll find someone else that will." *Id.* at 111. Gillenwaters concluded his comments by likening Lyle to a eunuch. *Id.* at 111. Lyle left the meeting to avoid losing his temper. *Id.*

After the meeting, Anderson stopped touching Lyle but continued to direct sexual comments and proposals toward him. *Id.* at 114-15. Lyle reported the continuing incidents to Thompson.

---

[3] At the time of the incident, Lyle has been promoted above Anderson, but was told not to tell anyone about the promotion until he had received a different uniform and the promotion had been formally announced. Opp. Ex. 1 at 109, 112. Lyle did not have the power to discipline Anderson. Opp. Ex.1 at 171.

*Id.*[4]  Lyle never reported the incidents to Human Resource Manager Pam Shepard because he "was afraid to even go upstairs to complain about anything that was going on in [Gillenwaters'] kitchen." *Id.* at 116-18.

Lyle felt uncomfortable and nervous when he heard Anderson's voice and would "start to shake like . . . here it comes again." *Id.* at 169.  Every time Anderson made comments to Lyle, he told her that the comments were unwelcome.  *Id.* at 199.  Anderson's response was "to bring other people" into the conversations.  *Id.* at 199.

Lyle sought psychiatric treatment.  Opp. Ex. 1 at 8.  After finding that the treatment was angering him, he turned to faith-based counseling.  *Id.* at 10.

Lyle eventually left ESPN Zone because "on top of" dealing with Anderson, he was not getting benefits, vacation time, and enough hours.  *Id.* at 124.

## II. Analysis

### A.  Summary Judgment Standard

Summary judgment may be granted when the moving party shows that there is no genuine issue of material fact, and it is legally entitled to judgment.  *See Kitchen v. Upshaw,* 286 F.3d 179, 182 (4th

---

[4] Thompson has testified that Lyle repeatedly told him that Gardner and Gillenwaters were not doing anything with his complaints about Anderson.  Opp. Ex. 4 at ¶ 4.  Thompson maintains that he took no action because he believed something would be done about the harassment.  *Id.* at ¶¶ 4-6.

Cir. 2002), *citing* Fed.R.Civ.P. 56(c).  If the moving party would not bear the burden of proof at trial, its initial burden is met by "pointing out" that the nonmoving party has not made a sufficient showing on an essential element of its case.  *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986).

After this initial showing, summary judgment will be granted unless the opponent produces evidence upon which a reasonable jury could return a verdict in its favor.  *Celotex,* 477 U.S. at 323-25*, citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986), *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986); *Thompson v. Potomac Elec. Power Co.,* 312 F.3d 645, 649 (4th Cir. 2002), *citing Anderson,* 477 U.S. at 255. [5]

B.  Sexual Harassment Claim

Title VII protects men from sexual harassment.  *Oncale v. Sundower Offshore Serv., Inc.,* 523 U.S. 75, 78 (1998).  To establish sexual harassment under Title VII, Lyle must prove: 1) the conduct was unwelcome; 2) it was based on his sex; 3) it was sufficiently severe or pervasive to alter his conditions of employment and to create an abusive work environment; and 4) it was imputable to ESPN Zone.  *Spicer v. Commonwealth of Virginia,* 66

---

[5] The opponent's burden cannot be met with "speculative" or baseless allegations or a "mere scintilla" of evidence.  *See Thompson,* 312 F.3d at 649, *citing Phillips v. CSX Transp., Inc.,* 190 F.3d 285, 287 (4th Cir. 1999).  However, all justifiable inferences will be drawn in favor of the non-moving party. *Phillips,* 190 F.3d at 287-88, *citing Anderson,* 477 U.S. at 255.

F.3d 705, 709-10 (4th Cir. 1995).

1.  Lyle's Employment Status

ESPN Zone argues that Lyle's claim must fail because he was Anderson's supervisor.  Memorandum in Support of Defendant's Motion for Summary Judgment ("Mot.") at 11.  Lyle has presented evidence that he did not have actual supervisory authority over Anderson.  Opp. Ex. 1 at 170-71, 201-202.  Accordingly, Lyle and Anderson are co-workers for the purposes of this motion.[6]

2.  Was Lyle Targeted because of his Sex?

ESPN Zone contends that Lyle was not targeted because of his sex.  Mot. at 12-13.  When determining whether the plaintiff was targeted because of gender, "the critical issue" is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not.  *Ocheltree v. Scollon Productions,* 335 F.3d 325, 331-32 (4th Cir. 2003).  "[A]n employee is harassed . . . because of his or her sex if, 'but-for' the employee's sex, he or she would not have been the victim of the discrimination."  *Hartsell v. Duplex Prods., Inc.,* 123 F.3d 766, 772 (4th Cir. 1997)(internal quotation omitted); *see also Smith v. First Union National Bank,* 202 F.3d 234, 242 (4th Cir. 2000).  "[E]xplicit or implicit proposals of sexual activity" satisfy this standard because "it is reasonable to assume those proposals would

---

[6] ESPN Zone admits that "accepting Lyle's testimony in the light most favorable to him, this case presents at most, as one of 'co-worker' harassment."  Mot. at 15.

not have been made to someone of the same sex." *Oncale,* 523 U.S. at 80.[7] Hence, conduct that is "sexually motivated," as opposed to merely "sexual in content," readily supports claims of disparate treatment based on sex. *See Lack v. Wal-Mart Stores, Inc.,* 240 F.3d 255, 260 (4th Cir. 2001).

Because Anderson made sexual proposals to Lyle and touched him in a sexual manner, Lyle has produced sufficient evidence of causation to survive summary judgment.

3.  Did the Conduct Create a Hostile Work Environment?

ESPN Zone argues that Lyle has not produced sufficient evidence about the severity of Anderson's acts to survive summary judgment. Mot. at 14.

To be actionable, sexual harassment must be "sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." *Ocheltree,* 335 F.3d at 333. The conduct must be subjectively abusive, as perceived by the victim, and objectively abusive to a reasonable person in the victim's position. *Id.* In assessing the objective abusiveness of conduct, the Court considers "all of the circumstances" including the frequency and severity of the conduct and whether it unreasonably interfered with an employee's work

_____

[7] Title VII does not reach discrimination based on "the employee's sexual behavior, prudery, or vulnerability" because such discrimination is not based on sex. *Hopkins v. Baltimore Gas & Elec. Co.,* 77 F.3d 745, 751 (4th Cir. 1996), *cert. denied,* 519 U.S. 818 (1996).

performance. *Id.* This approach "filters out" claims based on "the sporadic use of abusive language, gender-related jokes, and occasional teasing." *Id.*

Lyle has presented evidence that the incident subjectively harmed him; he vomited and sought psychiatric help. Opp. Ex. 1 at 8, 107. After the incident, Lyle indicated that he worked in apprehension of Anderson's continued verbal harassment. *Id.* at 169.

There is also evidence that the incident was objectively offensive. One of Lyle's co-workers, Ramina Adolemaiu-Bey, testified that after the incident, the kitchen staff stopped working and quietly looked at each other. Opp. Ex. 2 at 26. Another male kitchen employee stated "[i]f [Anderson] had done that to me, I would have been infuriated." Opp. Ex. 3 at ¶ 5. These reactions establish that Anderson's actions went far beyond mere offensive utterances and, instead, constituted physically humiliating behavior. *See, e.g., Ocheltree,* 335 F.3d at 333. Accordingly, the incident was of sufficient objective and subjective severity to survive summary judgment.[8]

---

[8] Though ESPN Zone argues that the incident should be considered an "isolated" event, giving Lyle the inferences he is due, the incident appears to have been but the most flagrant example of Anderson's continuing harassment. Furthermore, the severity of that incident affected Lyle's perception of Anderson's continued verbal harassment. Opp. Ex. 1 at 114-15 (sexual comments, including invitations for oral sex, continued after incident); *id.* at 169 (after incident, Lyle shook when he heard Anderson).

Anderson's continued sexual solicitations after the incident subjectively abused Lyle. Opp. Ex. 1 at 169. Given the severity of the incident, a reasonable jury could conclude that the continued proposals were objectively abusive as well.

4. Imputing Liability to ESPN Zone

When a non-supervisory co-worker harasses a fellow employee, the only basis for imputing that harassment to the employer is its "own negligence in failing, after actual or constructive knowledge, to take prompt and adequate action to stop" the harassment. *Mikels v. City of Durham,* 183 F.3d 323, 332 (4th Cir. 1999); *Katz v. Dole,* 709 F.2d 251, 255-56 (4th Cir. 1983). A plaintiff may demonstrate knowledge by proving that either: 1) "specific complaints [were] directed" to the plaintiff's superiors; or 2) "that a reasonable [person] intent on complying with Title VII would have known about the harassment." *Katz,* 709 F.2d at 255-56 (specific complaints); *Ocheltree,* 335 F.3d at 334 (reasonable person standard). Accordingly, the failure to provide "reasonable procedures for victims to register complaints" or the adoption of a "see no evil, hear no evil" approach will result in the employer's constructive knowledge of the harassment. *Ocheltree,* 335 F.3d at 334.[9]

---

[9]   To rely on a lack of notice, an employer "must provide [employees] with reasonable avenues for voicing [their] sexual harassment complaints." *Ocheltree,* 335 F.3d at 335. If the employer did not "exercise reasonable care in setting out the channels by which it could receive reports of sexual harassment . . . it is . . . in no position to rely on those inadequate channels to claim that it did not receive notice." *Id.*

Constructive knowledge may also be imputed if the harassment is so severe, the employer should have known about it. *Katz,* 709 F.2d at 255-56. An employer "on notice of sexual harassment must do more than indicate the existence of an official policy against such harassment." *Id.* at 256.

ESPN Zone asserts that Lyle failed to give it notice of the harassment under its anti-harassment policy. Mot. 16-18. In the alternative, ESPN Zone argues it remedied the situation because Anderson never touched Lyle after the incident. *Id*.

i. Lack of Actual or Constructive Notice

ESPN Zone asserts that it was not notified of the harassment. Mot. at 17. ESPN Zone argues that it provided a reasonable avenue for complaints and that Lyle is chargeable with knowledge of the policy. Mot. at 16-18. ESPN Zone asserts that this knowledge came from a break-room poster that explained its policy. Mot. Ex. 3 at 65-66 (Adolemaiu-Bey indicating a poster was in break-room similar to Mot. Ex. 4). ESPN Zone also emphasizes that Lyle acknowledged receipt of the policy. Reply Ex. 2 at 6 (signed receipt of handbook).[10]

Because there is a factual dispute as to whether Lyle received the handbook, the only notice which the Court can consider is the

_____

[10] ESPN Zone also asserts that Lyle attended a training session about sexual harassment in January 2001. The ESPN Zone did not, however, describe the seminar's content. Accordingly, the seminar adds nothing to the Court's analysis regarding what, if anything, Lyle knew about the formal harassment policy.

break-room poster.  Although the actual poster is not before the
Court, there is undisputed evidence that there was a poster similar
to Mot. Ex. 4 in an area where Lyle would have seen it.  Mot. Ex.
3 at 65-66.  With respect to harassment reporting procedures, Mot.
Ex. 4 states:

> "If you believe you have been harassed or discriminated
> against in violation of Company policy, call your Human
> Resources or Employee Relations Department, or the Equal
> Opportunity Programs Department.  You may also call your
> supervisor, department management or the Guideline at
> [phone number listed]."  Mot. Ex. 4.[11]

Lyle complained to his immediate supervisors, Gardner and
Thompson.  He also reported the incident to Gillenwaters, the
highest supervisor in the kitchen, who essentially blamed Lyle for
his failure to "stand up" to the perpetrators and told him that he
did not "like people that . . . play the victim."  Opp. Ex. 1 at

---

[11] The Employee Handbook is relevant to the reasonableness of
ESPN Zone's harassment policy.  Though the handbook indicates
that complaints formally filed with the Human Resources or Equal
Opportunity Programs Departments will be investigated, it notes
that those departments and Management administer the policy.
Mot. Ex. 2 at 5; *Id.* at 4 ("All members of Management and the
Equal Opportunity Program Department administer this policy.")
No part of the policy before the Court compels management to
forward harassment complaints to the Human Resources or Equal
Opportunity Departments.  Finally, though there is evidence that
managers may "write-up" employees for misbehavior, it is unclear
when this is required.  *See, e.g.,* Opp. Ex. 1 at 171 (regarding
manager's authority to write-up employees).

111. Lyle did not report the incident to the Human Relations Department or file a formal complaint. Opp. Ex. 1 at 116-18. Lyle indicated that he did not file because he feared Gillenwaters would retaliate against him. *Id.* at 118.

Lyle did not provide ESPN Zone the notice contemplated by its policy; i.e., he did not file a formal complaint to trigger the investigative process. At issue is whether Lyle has sufficient evidence to create a jury issue with respect to constructive notice.

Lyle has submitted evidence that one manager, Thompson, thought Lyle had complained of discrimination in a manner sufficient to trigger a response from ESPN Zone. Opp. Ex. 4 at ¶¶ 4-6 (Thompson thought Lyle's reports to other managers would result in the harassment being "taken care of."). The policy, which ESPN Zone asserts was not complied with, was not given to Lyle despite repeated requests. Opp. Ex. 1 at 67-69. The poster that provided information regarding the policy indicated that one could report harassment to their supervisor. Mot. Ex. 4. Furthermore, despite Lyle's complaints, it does not appear that any manager told him that he had to file a formal complaint to initiate an investigation. This evidence indicates that under the circumstances, ESPN Zone's anti-harassment policy was "dysfunctional." *See Barrett v. Applied Radiant Energy Corp.,* 240 F.3d 262, 266 (4th Cir. 2001)(distribution of dysfunctional

-12-

harassment policy does not prove employer's reasonable care in preventing harassment).

The break-room poster may have provided some notice to Lyle of alternative avenues for his complaint. Mot. Ex. 4. When asked why he did not report the incident to Human Resources, Lyle stated that he feared Gillenwaters would retaliate against him. Mot. Ex. 1 at 118. A fear of retaliation does not justify an employee's failure to report harassment. *Barrett,* 240 F.3d at 267.

There is evidence that ESPN Zone's anti-harassment policy did not provide a reasonable avenue for Lyle's complaints. Because the policy may not have provided Lyle a reasonable avenue to voice his complaint, the Court need not consider whether the harassment was pervasive enough to provide constructive notice of harassment to ESPN Zone. *Ocheltree,* 335 F.3d at 334 (failure to provide reasonable avenues for complaints is sufficient basis to impute constructive notice of harassment to employer).

ii. Adequate Remedial Action

When an employer is notified of sexual harassment, it must promptly take remedial action reasonably calculated to end the harassment. *Amirmokris v. Baltimore Gas & Electric Co.,* 60 F.3d 1126, 1131 (4th Cir. 1995). ESPN Zone asserts that because Anderson never touched Lyle again after the incident, it took prompt and adequate remedial action. Mot. at 17-18. Furthermore, ESPN Zone argues that the kitchen managers actively attempted to thwart

harassment in the kitchen "to ensure that the conduct remained within proper bounds."  Mot. at 18.

Lyle testified that verbal harassment, including proposals of sexual activity, continued after the incident.  Opp. Ex. 1 at 114-15, 169.  Accordingly, although the physical element of Anderson's harassment ceased, significant harassment persisted after the candy incident.  Perhaps more troublesome is ESPN Zone's failure to identify the steps it took to stop the harassment.  *See Amirmokris,* 60 F.3d at 1131-32 (generally, actions "reasonably calculated to end harassment" include measures such as formal investigations, disciplining of perpetrator, written warnings, requiring counseling, and monitoring of perpetrator).  Accordingly, there is a genuine issue of material fact as to whether ESPN Zone took any remedial measures that were reasonably calculated to end the harassment.

5. Lyle's Entitlement to Backpay

ESPN Zone asserts that because Lyle was not actually or constructively discharged, he is not entitled to backpay.  Mot. at 19.  Lyle has not asserted, at any point, that he seeks backpay or that a constructive discharge is at issue.  In fact, Lyle did not brief any opposition on this particular issue.  The complaint itself seeks $100,000 in damages caused by humiliation and emotional distress.  Accordingly, the backpay matter is now moot.

III.  Conclusion

Because there are genuine issues of material fact with regard to Lyle's sexual harassment claim, the motion for summary judgment will be denied.


November 20, 2003                        /s/
Date                              William D. Quarles, Jr.
                                  United States District Judge