UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
Northern Division

RODNEY LYLE )
 )
       Plaintiff, )
 )
v. )
 )  Civil Action No. WDQ-02-2075
 )
ZONE ENTERPRISES OF MD, LLC )
t/a ESPN Zone )
 )
 )
       Defendant. )
_____)

## JOINT PRETRIAL ORDER

This Pretrial Order is submitted by Plaintiff Rodney Lyle and Defendant Zone Enterprises of Maryland, LLC, t/a ESPN Zone ("ESPN Zone"), in accordance with Local Rule 106, and the Court's Order dated December 1, 2003.

    A.    <u>BRIEF STATEMENT OF FACTS PLAINTIFF PROPOSES TO PROVE</u>

Plaintiff began working at the Baltimore ESPN Zone on December 28, 1998 as a line and sauté cook making $10.50 per hour. Plaintiff never received an employee handbook or a policy manual on sexual harassment.

Around July 2000, Angela Anderson, a line cook at ESPN Zone, started making sexual comments to Mr. Lyle. She constantly spoke of oral sex and requested him to perform oral sex on her. One day while Mr. Lyle was working, Ms. Anderson forced herself onto him and kissed him against his will while he was working. After she did

this, Mr. Lyle went to the men's room and vomited, and then he returned to the kitchen and complained to his manager.  There was no corrective action taken as a result of Mr. Lyle's complaints.  Ms. Anderson's sexual comments continued unabated.  A couple days after the incident Mr. Lyle complained again to management and no corrective action was taken.

Finally, weeks later when Mr. Lyle complained to Mark Gillenwalters, a kitchen manager, his response to Mr. Lyle was to "get some f__king balls."  Mr. Lyle then went to Devon Thompson, a kitchen manager, and complained about the sexual harassment, yet there was no corrective action taken as a result of Mr. Lyle's complaints.

In the mean time, Mr. Lyle's work performance was being affected.  After months of enduring the sexual harassment and having his complaints ignored, Mr. Lyle could no longer stand the hostile working environment, and in January 2001, he quit his position at ESPN Zone.  The reason he gave ESPN Zone was that he could no longer tolerate the sexual harassment by Anderson.

    B.    <u>PLAINTIFF'S LEGAL THEORIES</u>

The Plaintiff's legal theory is that the Defendant created a sexually hostile work environment that violated Title VII of the Civil Rights Act of 1964, as amended.

C.      BRIEF STATEMENT OF FACTS THAT DEFENDANT PROPOSES TO PROVE

Defendant Zone Enterprises of MD, LLC, owns and operates ESPN Zone, a sports themed restaurant and entertainment establishment located in Baltimore's Inner Harbor.

ESPN Zone maintains a clear policy against sexual harassment and it regularly communicates that policy to its employees through a handbook, training and posters. The policy defines the procedure for the handling of a complaint of sexual harassment, specifically requiring that "Employees who believe that they have been harassed should promptly report the facts of the incident and the name of the person involved to the Human Resources or Equal Opportunity Program Departments."

The Company's sexual harassment policy was displayed prominently on a poster in the employee break room. The poster not only reiterates the company's prohibition of sexual harassment, but also provides information on making complaints, including a toll free phone number to call. In addition, employees of ESPN Zone are given periodic training classes on sexual harassment called, "Working With Integrity," in which the Company policy is explained. Lyle and his co-workers at ESPN Zone have attended these sessions.

Plaintiff Lyle was hired by ESPN Zone as a full-time Line Cook II, at the rate of $10 per hour, at the end of December 1998. He became a Line Cook in May 1999, with an increase in pay to $11 per hour. In March 2000, Lyle's status was changed to part-

time after a review of his hours over the preceding eight months showed his hours averaging below the 30 hours required to remain full-time. As a part-time employee, Lyle was no longer eligible for vacation, sick or holiday pay.

In early July 2000, Lyle was promoted to the position of Line Lead Cook, a step above the line cook position, with a commensurate increase in pay to $12.50 per hour. Lyle's duties were essentially those of a sous chef in training, and he was responsible for supervising a shift of 20-30 people.

Following his promotion, Lyle received a series of disciplinary warnings relating largely to his ability to follow instructions and procedures as well as arriving on time for work. On July 17, 2000, for example, Lyle received a verbal warning because he did not show for a scheduled inventory. When Lyle failed to appear for another Inventory in early August, Gillenwalters gave him a written warning.

By September 22, Lyle had received a final written warning as a result of his failure to follow proper call out procedures.

By Lyle's own account, the alleged harassment began in "late July" 2000 – "right around the time I got my promotion." The person who allegedly harassed Lyle was a line cook named Angela Anderson, more commonly known by her nickname Buddha."

Anderson was working with Lyle well before this date. Although Anderson spoke freely about her own sex life and engaged in sexual banter and sex related conduct with other co-workers, her comments were directed at both male and female employees, and were not based on gender. Nor was her conduct sufficiently severe or

pervasive so as to create a hostile work environment. Both the male and female co-workers also had discussions regarding various forms of sex, and their personal sex lives.

Lyle claims that in late July, Anderson and other co-workers allegedly began to tease him over the course of a week about his not having oral sex with his girlfriend, a practice he claims he found "hideous." Although he claims he was upset by the remarks, he made no effort to contact Human Resources, or even complain to his manager. ESPN Zone was unaware of any conduct that could reasonably be considered a hostile work environment. In fact, ESPN Zone had no actual or constructive knowledge of any hostile work environment.

What Lyle has characterized as the "final incident," occurred a few weeks later. In "mid-August 2000," Anderson was passing by Lyle eating a piece of candy. Lyle called out to her "hey Buddha, give me a piece of candy." When Lyle turned to receive the candy, Anderson allegedly grabbed the sides of his face and forced the candy into his mouth with an unexpected kiss.

While Lyle now claims he was offended by the conduct, he never made any such report to his supervisors or to Human Resources.

Following the candy incident, Anderson never physically touched Lyle again. Although Lyle claims she continued to make "sexual comments every day, every morning," and despite the fact that there was a Human Resources manager on the premises, Lyle never reported the alleged conduct. Lyle did approach Human

5

Resources during this time period with other, unrelated concerns, regarding his benefits.

On January 21, five months following the alleged candy incident, Lyle got into a verbal exchange with Anderson over her newspaper, which was sitting on the counter. Anderson allegedly told him to put down her "motherfucking paper." Lyle threw it on the table, prompting Anderson to call him a "bitch-assed nigger." His comments were overheard by Gardner, who promptly directed him to come in to the office. Lyle flatly refused and walked off the job.

Lyle filed a charge of discrimination with the Maryland Commission on Human Relations ("MCHR") a little more than a month later. He also filed a complaint with the Maryland Department of Labor Licensing and Regulation ("DLLR") protesting the denial of vacation benefits. Both agencies investigated the claims and both agencies issued written decisions finding no merit to Lyle's allegations.

Lyle submitted a written protest of the MCHR's dismissal challenging the extent of the MCHR's investigation and claiming that ESPN Zone engaged in a cover up. His request for reconsideration was denied, and a notice of right to sue issued on February 20, 2002. This action promptly followed.

  D.  <u>DEFENDANT'S LEGAL THEORIES</u>

  1.  Defendant did not create or condone a hostile work environment on the basis of sex in violation of Title VII of the Civil Rights Act of 1964, as amended.

  2.  Plaintiff was not subjected to a hostile work environment based on his sex.

3. Plaintiff cannot prove that the claimed harassment was sufficiently severe or pervasive to alter the conditions of his employment so as to create an abusive working environment.

4. Plaintiff cannot demonstrate that Defendant knew or should have known of the alleged conduct.

5. Defendant maintained adequate and effective policies against harassment in the workplace, and Plaintiff failed to make use of those policies or to otherwise avoid harm.

6. By distributing and implementing its anti-harassment policy, Defendant exercised reasonable care in preventing and promptly correcting sexual harassment.

7. Plaintiff cannot demonstrate that Defendant administered its policy in bad faith or that the policy was otherwise defective or dysfunctional.

8. Assuming Defendant had knowledge of the alleged conduct, Defendant took reasonable and effective measures to end the known harassment.

9. As a supervisor of the alleged harasser, Plaintiff cannot establish that he was subject to a hostile work environment.

10. Punitive damages, if claimed, are not available to Plaintiff because the evidence does not and will not meet the standards set forth in *Kolstad v. American Dental Ass'n*, 119 S.Ct. 2118 (1999).

11. Plaintiff suffered no economic loss as a result of the alleged conduct, and is limited solely to non-economic damages, if any.

12.     Plaintiff has failed to produce any evidence sufficient to demonstrate that he suffered any emotional damage as a result of the alleged discriminatory conduct.

13.     Assuming Plaintiff is able to establish emotional damage as a result of the alleged conduct, any remedy for such injury must be reduced on account of his failure to promptly report the alleged conduct.

E.      COUNTER CLAIMS AND CROSS CLAIMS

There are no counter claims or cross claims.

F.      AMENDMENTS OF THE PLEADINGS

The parties request that the Complaint be amended to name the Defendant as "Zone Enterprises of Maryland, L.L.C."

G.      STIPULATIONS OF FACT

The parties stipulate that the Defendant is an employer as defined by Title VII of the Civil Rights Act, as amended, and employs over fifteen (15) employees.

H.      DETAILS OF THE DAMAGES CLAIMED AS OF DATE OF PRETRIAL CONFERENCE

The Plaintiff claims compensatory damages of $100,000.00 (One Hundred Thousand Dollars) plus attorneys fees.

I.      LISTING OF EACH DOCUMENT OR EXHIBIT

**Plaintiff's Exhibits**

*Plaintiff's Exhibit One*   - Defendant's "Harassment or Discrimination In Employment" Policy

*Plaintiff's Exhibit Two*   - Defendant's Answers to Plaintiff's Interrogatories

**Defendant's Exhibits**

*Defendant's Exhibit One* - Employee Policy Manual

*Defendant's Exhibit Two* - Harassment and Discrimination in Employment Poster

*Defendant's Exhibit Three* - Employee Policy Manual Signature Page, signed by Rodney Lyle, dated 12/28/98

*Defendant's Exhibit Four* - Letter of Mark Gillenwalters dated March 20, 2001

*Defendant's Exhibit Five* - Contact sheet for Employee Rodney Lyle

*Defendant's Exhibit Six* - Notice of Disciplinary Action for Rodney Lyle, dated 8/7/00

*Defendant's Exhibit Seven* - Notice of Disciplinary Action for Rodney Lyle, dated 9/22/00

*Defendant's Exhibit Eight* - DLLR Determination, Claim No. 01-02-68, dated 5/1/01

*Defendant's Exhibit Nine* - Unemployment Insurance Appeals Decision, Lyle v. Zone Enterprises, dated 3/22/01

*Defendant's Exhibit Ten* - Charge of Discrimination, Lyle v. ESPN Zone ZONE, dated 3/28/01

*Defendant's Exhibit Eleven* - Written Finding, Lyle v. ESPN Zone ZONE, dated 1/4/02

*Defendant's Exhibit Twelve* - Letter of Rodney Lyle, dated 1/8/02, to MCHR

*Defendant's Exhibit Thirteen* - Dismissal and Notice of Right to Sue, to Rodney Lyle, 2/20/02

*Defendant's Exhibit Fourteen* - Status Change Notification, Benefit Eligibility three pages.

*Defendant's Exhibit Fifteen* - Charge of Rodney Lyle v. Suburban Country Club

*Defendant's Exhibit Sixteen* - Disciplinary Warning Notice and Action Taken, Suburban County Club, 2 pages, dated 12/28/97

*Defendant's Exhibit Seventeen* - Written findings of MCHR. Lyle v. Suburban Country Club

J.  PLAINTIFF'S LIST OF WITNESSES

    1.  Rodney Lyle, 3521 Cliftmark Avenue, Baltimore, MD 21213.

    2.  Ramina Adolemaiu-bey, 2907 Mallview Road, Baltimore, MD 21230.

    3.  Devon Thompson, 118-25189 Street, Queens, NY, 11412.

    4.  Keith Parker, 1167 Cleveland Street, Baltimore, MD 21216.

K.  DEFENDANT'S LIST OF WITNESSES

    1.  Tara Gardner, 6438 Dogwood Road, Woodland, MD 21207, 410-281-6023

    2.  Mark Gillenwalters, 920 Crane Street, Schenectady, NY, 518-374-7840

    3.  Dexter Davis, 2305 Elsinore Avenue, Baltimore, MD 21216

    4.  Devon Thompson, 118-251 89th Street, Queens, NY 11412

    5.  Keith Parker, 1167 Cleveland Street, Baltimore, MD 21216

    6.  Denise L. Jackson, 610 Circle Seven Drive, Glendale, California 91201,

    7.  Marcus Woodard, 4136 West Forest Park Ave., Baltimore, MD 21207, 410-521-0960

    8.  Margaret McCormick, 31-26 33rd St. Apt 1R, Long Island City, NY 11106

    9.  Jim Haney, 7 Hermitage Ct., Marlton, NJ 08053, 856-983-9164

L.  EXPERT WITNESSES

The Plaintiff does not designate any experts.

The Defendant does not designate any experts

M.  PAGES FROM DEPOSITIONS THAT PLAINTIFF WILL USE IN CASE IN CHIEF

In the event that the witness Ramina Adolemaiu-bey is unavailable to testify as a witness, the Plaintiff will introduce her deposition testimony pages 1-28, 67, 69, 70, 86-88.

N.  DEFENDANT'S COUNTER DESIGNATION OF DEPOSITION PAGES

Deposition of Ramina Adolemaiu-bey:

p. 7, line 21 to p. 8, line 7;

p. 10, line 9 to line 19;

p. 13, line 6 to line 11;

p. 15, line 14 to p. 16, line 4;

p. 20, line 5 to line 15;

p. 21, line 17 to p. 22, line 8;

p. 48, line 5 to line 21;

p. 59, line 17 to p. 60, line 21;

p. 61, line 4 to p. 63, line 20;

p. 64, line 3 to p. 66, line 20;

p. 74, line 12 to line 17;

p. 96, line 14 to p. 98, line 1;

       p. 108, line 13 to p. 109, line 10; and

       p. 111, line 2 to line 21.

       <u>Deposition of Rodney Lyle</u>:

       p. 19, line 5 to p. 20, line 21;

       p. 25, line 7 to p. 27, line 2;

       p. 27, line 14 to p. 34, line 9;

       p. 35, line 6 to p. 36, line 5;

       p. 79, line 5 to p. 80, line 11;

       p. 81, line 8 to p. 82, line 18;

       p. 116, line 18 to p. 118, line 19;

       p. 119, line 1 to p. 120, line 11;

       p. 168, line 13 to p. 169, line 6; and

       p. 169, line 20 to p. 170, line 15.

O.    <u>PRETRIAL RELIEF</u>

The Plaintiff plans to file a Motion in Limine to prevent the jury from hearing any information regarding the Plaintiff's prior claims of discrimination.

Defendant intends to oppose this Motion.

Respectfully submitted,

| /s/ | /s/ |
|---|---|
| _____ | _____ |
| Morton Edelstein | Kevin McCormick |
| Edelstein & Radford | Whiteford, Taylor & Preston L.L.P. |
| 110 St. Paul Street | Seven Saint Paul Street |
| Suite 402 | Baltimore, Maryland 21202-1626 |
| Baltimore, Maryland 21202 | 410-347-8700 |
| 410-685-0770 | Attorney for the Defendant |
| Attorney for the Plaintiff | Zone Enterprises of Maryland, L.L.C. |
| Rodney Lyle | |